UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:08-CV-00138-JHM

BRITTANY KEYS                                                                    PLAINTIFF

V.

DART CONTAINER CORPORATION OF KENTUCKY                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Dart Container Corporation of Kentucky's
("Dart) Motion to Strike Plaintiff's First Supplemental Response to Defendant's First Set of
Interrogatories and Requests for Production of Documents and Motion to Strike Affidavit of Dr.
Harold Moses and/or Motion in Limine [DN 49] and Motion for Summary Judgment [DN 51].  Fully
briefed, and having heard oral argument, these matters are ripe for decision.

### I. BACKGROUND

Defendant Dart Container Corporation of Kentucky is a business engaged in the production
and sale of high-quality food packaging containers.  Defendant has a production facility located in
Horse Cave, Hart County, Kentucky, and is Hart County's largest employer.  Defendant hired
Plaintiff Brittany Keys to work on its Thermoform production line as an Inspector/Packer ("I/P") in
October 2004.  (Compl. ¶ 9.)  Plaintiff's job duties consisted of (1) monitoring the product coming
off the production line and ensuring it met specified standards, (2) pulling the finished product from
the line, separating it into appropriate batches and running it through the bagging mechanism, (3)
making sure that sleeves/bags of finished product were sealed, (4) checking to make sure the finished
packages contained the correct number of containers, (5) running the sleeves/bags through a "casing"
machine, which placed the product into case boxes for shipment, and (6) pulling the finished cases

off the machine and stacking them on pallets for relocation to the shipping area.  (Def.'s Mot. for Summ. J., Ex. C, Thermoform I/P Job Description.)  Plaintiff's job as an I/P was performed on the production floor where the environment was described as hot, sometimes reaching temperatures of 110 to 120 degrees.  (See id., Ex. C; Ex. B, Keys Dep. 132:1-2.)  It also required that Plaintiff stand for long periods of time on the line.  (Id., Ex. C.)

In February 2007, Plaintiff became ill, experiencing headaches, dizziness, vision problems and numbness on her right side.  Following a visit to her doctor on February 23, 2007, Plaintiff was ordered to refrain from working until March 4, 2007.  (Keys Dep 81:19-82:16.)  Plaintiff requested leave under the Family Medical Leave Act ("FMLA"), which was granted from the date of her February 23, 2007, doctor's visit until April 10, 2007. (Id. at 82:2-6, 87:10.)  During this period of leave, Plaintiff was diagnosed with Multiple Sclerosis ("MS").  (Id. 89:22-24.)  However, her treating neurologist stated that she was "asymptomatic" and that she could return to work without any restrictions.  (Def.'s Mot. for Summ. J., Ex. H, University Neurologist's Letter dated Apr. 2, 2007.)  The neurologist's office did state that it would sincerely appreciate if Defendant would attempt to avoid exposing Plaintiff to extreme heat because such an environment can be a challenging factor for those who suffer from MS.  (Id.)

Plaintiff returned to work on April 10, 2007, but took additional FMLA leave two days later on April 12, 2007.  (Keys Dep. 92:1-15.)  This period of FMLA leave extended to May 1, 2007.  (Id. at 93:5-6.)  During this leave period, Plaintiff submitted a Record of Request for Disability Accommodation, seeking accommodations for her MS condition under the Americans with Disabilities Act ("ADA").  (Def.'s Mot. for Summ. J., Ex. J, Request for Disability Accommodation dated Apr. 12, 2007.)  Plaintiff requested to be moved to an office or inspector position that would be cooler, that she be permitted to take extra bathroom and resting breaks, and that she be permitted

2

to keep ice and/or water near her workstation to help cool her down.  (Id.)  Prior to the Defendant's official response to Plaintiff's request, an I/P position in the Polypropylene Department became available, which was a "cooler" position than Plaintiff's I/P position on the Thermoform line.  (Id., Ex. M, McManimie Aff. dated Dec. 11, 2009, ¶ 9.)  Plaintiff applied for the position and was selected based on her seniority, in accordance with Defendant's normal transfer policy.  (Id. at ¶ 10; Ex. L, Promotion Log.)  Plaintiff returned to work on May 1, 2007, and began working in the Poly-line I/P position.  On May 11, 2007, Defendant officially denied Plaintiff's request for accommodation.  (Id., Ex. K, Dart Denial of Accommodation dated May 11, 2007.)

In July 2007, after Plaintiff had worked on the Poly-line for approximately two months, a position as a Quality Control Technician became available at the Horse Cave facility.  (Compl. ¶ 18.)  This position involved inspecting the Defendant's product as it came off of the line to ensure that it met the required quality specifications.  In order to apply for the position, Plaintiff was required to pass a qualification test, which she did.  (Keys Dep. 137:24-139:5.)  The position would have permitted the Plaintiff to work in a cooler environment than her current Poly-line I/P position, however, Plaintiff was not awarded the position.  (Id. at 40:8-22.)

Plaintiff continued to work in the Poly-line I/P position without incident until August 12, 2007, when she requested to be placed on intermittent FMLA leave until November 1, 2007.  (Def.'s Mot. for Summ. J., Ex. N, Leave of Absence dated Aug. 15, 2007.)  During this period of leave, Plaintiff submitted a second Record of Request for Disability Accommodation on September 5, 2007, requesting the ability to sit at her workstation so long as it did not interfere with her job, and again seeking to be moved to a position in a cooler environment.  (Id., Ex. O, Request for Disability Accommodation dated Sept. 5, 2007.)  On September 18, 2007, Defendant's ADA Coordinator, Shari Sweeney, requested additional information from Plaintiff in order to process her request.  (Id., Ex.

3

P, Letter dated Sept. 18, 2007.)  Specifically, Ms. Sweeney requested a physician's statement that included medical documentation of how Plaintiff's MS condition affected a major life activity, and a review of Plaintiff's job description identifying the essential functions that are affected by Plaintiff's MS condition.  (Id.)

On October 29, 2007, while still on leave, Plaintiff filed an EEOC Charge of Discrimination against Defendant.  (Id., Ex. U, Charge of Discrimination.)  In the charge, Plaintiff alleged that she was discriminated against on account of her MS disability because the Defendant had denied her the quality control technician position or some other job in a cooler environment.  (Id.)

Although, Plaintiff was set to return to work on November 1, 2007, she requested and was granted her third period of FMLA leave from October 30, 2007 until November 20, 2007.  (Id., Ex. Q, Leave of Absence dated Nov. 2, 2007.)  When she returned to work on November 20, 2007, her treating physician again released her to return to work without any restrictions.  (Keys Dep. 125:5-10.)  On November 26, 2007, Plaintiff requested additional FMLA leave, but was denied on the basis that she had exceeded the allotted twelve weeks of leave permitted under the FMLA.  However, Defendant did permit Plaintiff to take leave under its voluntarily-provided sickness and accident leave benefit.  (Id., Ex. R., Leave of Absence dated Nov. 26, 2007.)  Plaintiff returned to work from her sickness and accident leave on December 3, 2007.  (Id.)  In conjunction with her return, Plaintiff's new treating physician, Dr. Harold Moses signed her Return to Work form, again authorizing her to return to work without any restrictions.  (Pl.'s Resp., Dr. Harold Moses' Aff., Ex. 2.)  Dr. Moses further indicated that the medication he had prescribed for Plaintiff would decrease the progression and exacerbation of her condition.  (Id., Ex. 1, at 2.)

After her return to work, Plaintiff requested that Dr. Moses supplement her second request for accommodation with the information requested by Ms. Sweeney.  On December 12, 2007, Dr.

4

Moses authored the following letter:

> This is to state that Ms. Brittany Keys is a patient of mine being seen in the Multiple Sclerosis Center at Vanderbilt with a diagnosis of multiple sclerosis. Because of her problems related to her MS, I have suggested she try to be on her feet for no more than one hour at a time. She also needs to avoid environments where the temperature is more than 85-88 degrees. Heat can make her MS symptoms worse. Heat can cause her to have fatigue and can also weaken her.
>
> If you have any other questions, please do not hesitate to contact me.

(Def.'s Mot. for Summ. J., Ex. S., Dr. Moses' Letter dated Dec. 12, 2007.) On December 31, 2007, after receipt and consideration of the above mentioned letter, Defendant again denied Plaintiff her requested accommodation. (Id., Ex. 22, Dart Denial of Accommodation dated Dec. 31, 2007.) In the denial letter, Defendant characterized Dr. Moses' correspondence as imposing standing and heat restrictions. (Id.) Because Defendant found that Plaintiff was under standing and heat restrictions, it found that she could not perform the essential functions of her position with or without a reasonable accommodation, and that there were no other open positions "that would meet these restrictions," for which she was qualified. (Id.) Therefore, not only was Plaintiff denied an accommodation, but she was also terminated. (See Def.'s Mot. for Summ. J. 10.) However, Defendant's former Manager of Human Resources has filed an affidavit stating that, contrary to Defendant's statement, there were in fact open and available positions for which Brittany was qualified at the time of her termination. (See Pl.'s Resp., Ex. K, Beverly McManimie Aff., ¶¶17-18.) Furthermore, Plaintiff's treating physician, Dr. Moses has since stated in an affidavit that the December 12, 2007 correspondence was not a restriction on Brittany, and that at that time of her termination she was under no work restrictions. (See Pl.s' Resp., Ex. I, Dr. Harold Moses' Aff. ¶¶ 12, 14.)

On January 29, 2008, Plaintiff filed a second EEOC Charge of Discrimination alleging that she was terminated in retaliation for filing her first EEOC Charge of Discrimination. (Id., Ex. V, Charge of Discrimination dated Jan. 29, 2008.) On June 26, 2008, Plaintiff received her right to sue

letter from the EEOC.  (Compl., Ex. A, Right to Sue Letter dated June 26, 2008.)  On September 25, 2008, Plaintiff filed the instant lawsuit alleging that she was discriminated against in violation of the ADA and the Kentucky Civil Rights Act ("KCRA").  Plaintiff has alleged the following claims: that she was actually disabled, that she was "regarded as" disabled, that she was denied a reasonable accommodation, and that she was retaliated against for filing an EEOC complaint.  Defendant has now moved for summary judgment as to all of Plaintiff's claims.  On June 28, 2012, the Court heard oral argument on Defendant's motion for summary judgment.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving

6

party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

**A. Motion to Strike**

Following a telephonic status conference held on November 4, 2011, Plaintiff was ordered to provide "supplemental discovery responses by providing witness statements in affidavit form" by no later than November 30, 2011. (See Order dated Nov. 7, 2011 [DN 48].) On November 30, 2011, Plaintiff filed her First Supplemental Response to Defendant's First Set of Interrogatories and Requests for Production of Documents. (Def.'s Mot. to Strike 1-2 [DN 49].) This Supplemental Response included not only the affidavits of Beverly McManimie and Dr. Harold Moses, but it also included additional exhibits to be introduced at trial, a supplemented list of itemized damages, and the Plaintiff's employment history for the past seven years. (Pl.'s Resp. to Def.'s Mot. to Strike 5 [DN 50].) Defendant has now moved to strike the Plaintiff's Supplemental Responses and the affidavit of Dr. Moses.

Defendant contends that Plaintiff's Supplemental Responses should be stricken from the record because discovery has closed and "the only extension that the Plaintiff was given was to file witness affidavits not to supplement any other discovery."[1] (Def.'s Mot. to Strike 2.) Plaintiff contends that she is under a continuing duty to supplement her responses under Fed. R. Civ. P. 26(e), which states in pertinent part:

> A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the

---

[1] Pre-trial discovery closed on November 1, 2011. (See Order dated July 6, 2011 [DN 32].)

7

additional or corrective information has not otherwise been made
known to the other parties during the discovery process or in writing;
or
(B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Defendant's reply is silent as to Plaintiff's assertion that she was fulfilling her duties under the Rules of Civil Procedure. The Court finds that Plaintiff was timely supplementing incomplete or incorrect responses pursuant to Fed. R. Civ. P. 26(e) and, therefore, **DENIES** Defendant's motion to strike the Plaintiff's First Supplemental Response.

Defendant has also moved to strike the affidavit of Dr. Harold Moses because Plaintiff failed to timely disclose him as an expert witness. Plaintiff contends that Dr. Moses was timely disclosed as Plaintiff's treating physician in her Fed. R. Civ. P. 26 initial disclosures as well as her initial answers to Defendant's interrogatories in 2009. Plaintiff argues that Dr. Moses can testify about opinions formed at the time he treated Plaintiff as a treating physician under Fielden v. CSX Transportation, Inc., 482 F.3d 866, 869 (6th Cir. 2007). In Fielden, the court addressed the necessity of filing an expert witness report when a treating physician is disclosed as a potential witness. The Sixth Circuit held that under Rule 26, "a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." Id. at 871.

While Defendant recognizes the treating physician exception outlined in Fielden, it contends, in its Reply, that Paragraphs 9, 11, 12, 13, and 14 of Dr. Moses' affidavit should be stricken because they fall outside the scope of Dr. Moses' role as a treating physician. The identified paragraphs explain why Dr. Moses authored the December 12, 2007 correspondence, in which he states that Plaintiff "needs to avoid environments where the temperature is more than 85-88 degrees." (See

8

Def.'s Mot. for Summ. J., Ex. S, Dr. Harold Moses' Correspondence dated Dec. 12, 2007.) Defendant argues that the identified paragraphs, especially Paragraph 11,[2] are opinions rendered after treatment that are more akin to expert opinions than a treating physician's opinions.

The Court disagrees. The affidavit of Dr. Moses is not an undisclosed expert opinion. The affidavit clarifies a timely disclosed witness's own writing. The affidavit merely states what Dr. Moses' intent was when he authored the correspondence, as well as the factual events surrounding the correspondence after it was created. In this sense, the affidavit demonstrates Dr. Moses' testimony as a fact witness. It does not seek to introduce any expert opinion regarding the Plaintiff's condition. While Paragraph 11 may be irrelevant and ultimately inadmissible at trial, it is not an expert opinion and need not be struck for that reason, which consequently is the only issue before the Court. Accordingly, the Court **DENIES** Defendant's motion to strike Dr. Moses' affidavit as an untimely expert opinion.

## B. ADA & KCRA Claims

Plaintiff's Complaint contains several different ADA and KCRA claims, and in its Motion for Summary Judgment, Defendant has argued that summary judgment is appropriate for each claim. In her Response to Defendant's Motion for Summary Judgment, Plaintiff narrows her theories of recovery down to a single claim: that Defendant regarded her as disabled and made its decision to terminate her based upon its misperception that Plaintiff's condition substantially limited her ability to perform her job or any other open job at the manufacturing facility. (See Pl.'s Resp. 6.) Plaintiff contends in her Response that "[t]he evidence of record establishes that: 1) DART regarded Ms. Keys

---

[2] In Paragraph 11, Dr. Moses states that after reviewing Defendant's answers to interrogatories, "that it appears that Dart used my note of December 12, 2007 as an excuse for terminating Brittany." (Dr. Moses' Aff. ¶11.)

as 'disabled due to MS, as defined under the Americans with Disabilities Act of 1990; and 2) DART terminated Ms. Keys as a result of that perception." (Id. at 1.)  Plaintiff then argues that Defendant's motion for summary judgment wholly ignores her "theory of liability in this case and the direct evidence of record that supports it." (Id. at 2.)  Plaintiff's brief contains only one argument heading: "Ms. Keys Was Regarded As Having An Impairment That Substantially Impairs Her Ability To Work." (Id. at 5.)  Plaintiff's Response does not address or discuss any of her other claims or the Defendant's arguments for summary judgment on those claims.

Given the lack of argument regarding any other claim, and the fact that Plaintiff's Response discusses a single "theory of liability," "regarded as" disabled liability, Defendant's Reply contends that Plaintiff has abandoned and waived her ADA and KCRA claims that she was actually disabled, was denied a reasonable accommodation, and was retaliated against for filing an EEOC charge.  See Ctr. for Biological Diversity v. Rural Utils. Serv., 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion.") (citing Humphrey v. U.S. Attorney General's Office, 279 F. App'x 328, 331 (6th Cir. 2008)).  However, during her oral argument, counsel for Plaintiff surprisingly argued that Plaintiff had presented sufficient evidence for her "regarded as" disabled claim and her retaliation claim to survive summary judgment.  Defendant argued that Plaintiff's failure to raise an argument regarding her retaliation claim in her brief was a waiver of such an argument.

The question before the Court is whether an argument not addressed during briefing, but instead raised for the first time at oral argument has been waived.  Other district courts in the Sixth Circuit have held that "[i]t is well established that a moving party may not raise a new issue for the first time in its reply brief or at oral argument."  Probst v. Central Ohio Youth Ctr., 511 F. Supp. 2d

10

862, 871 (S.D. Ohio 2007); see also In re First Energy Corp. Sec. Litig., 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004). This rule has also been applied to non-moving parties who fail to address arguments in their responsive briefs. See Maher v. Int'l Paper Co., 600 F. Supp. 2d 940, 949 n.4 (W.D. Mich. 2009) (refusing to consider an argument raised for the first time at oral argument where the party had failed to include the argument in its response to a motion for summary judgment); JDC Mgmt., LLC v. Reich, 644 F. Supp. 2d 905, 928 n.17 (W.D. Mich. 2009) (" This court need not, and generally does not, consider arguments, theories, or evidence raised for the first time at oral argument.")

The Sixth Circuit has stated that the issue of waiver revolves around a party's ability to respond to the argument. Shelby Cnty., Health Care Corp. v. Majestic Star Casino, 581 F.3d 355, 372 n.7 (6th Cir. 2009). Thus, arguments first raised in a reply brief are deemed to have been waived, because "a party 'ordinarily has no right to respond to the reply brief, at least not until oral argument.'" Id. (quoting Scottsdale Ins. Co. v. Flowers, 513 F.3d 346, 553 (6th Cir. 2008)). The Court finds that this logic likewise applies to arguments raised by a respondent for the first time at oral argument. Such an action disadvantages the moving party by limiting its ability to meaningfully respond.

The Court agrees with the court in Maher, and finds that a non-moving party waives an argument by failing to address the argument in its response brief, and instead raising it for the first time at oral argument. See Maher, 600 F. Supp. 2d at 948. Therefore, the Court will not consider Plaintiff's argument regarding her retaliation claim raised for the first time at oral argument, and deems that argument waived. Accordingly, Defendant's motion for summary judgment regarding Plaintiff's ADA and KCRA claims that Plaintiff was actually disabled, was denied a reasonable accommodation, and was retaliated against for filing an EEOC charge is **GRANTED**. See

11

Humphrey v. U.S. Attorney General's Office, 279 F. App'x 328, 331 (6th Cir. 2008); Ctr. for

Biological Diversity v. Rural Utils. Serv., 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009).

The Court will now address Plaintiff's "regarded as" disabled claim.[3]  As an initial matter,

the parties dispute the appropriate framework under which Plaintiff's claim should be analyzed.

Plaintiff contends that she has presented a direct evidence case of discrimination because she was told

that she was being terminated because there were no positions available at the Defendant's facility

that fit her doctor imposed restrictions.   In support of this contention, Plaintiff cites Beery v.

Associated Hygienic Products, LLC, 243 F. App'x 129, 132–33 (6th Cir. 2007).  In Beery, a divided

panel of the Sixth Circuit held that where a plaintiff presents evidence that he was told he was being

discharged because the employer could not accommodate his condition, that the proper approach for

analyzing his ADA claim is under the direct evidence framework.  Id.  However, Judge Batchelder's

concurrence in Berry disagrees with the majority's decision to use the direct evidence approach.  Id.

at 136.  Judge Batchelder argued that "[d]irect evidence is evidence that 'does not require the fact

finder to draw any inferences to reach th[e] conclusion' that 'unlawful discrimination was at least a

motivating factor in the employer's actions.'" Id. (quoting Amini v. Oberlin Coll., 440 F.3d 350, 359

(6th Cir. 2006)).  Judge Batchelder stated that

> [b]ecause the law does not prohibit AHP from firing Beery based on the fact that it
> did not have any available positions he could perform in light of his work restrictions,
> I would find that this is not a case involving direct evidence of discrimination.  A
> fact-finder must make at least one inference when starting from this evidence-i.e.,
> AHP's reliance on Beery's doctor-imposed work restrictions-and arriving at the
> conclusion that AHP unlawfully perceived Beery as disabled; namely, the fact-finder
> must infer that in making the termination decision AHP did not rely merely on the

---

[3] Because the KCRA was modeled after federal law, Kentucky courts have interpreted it
consistent with federal law.  Therefore, an analysis of a claim under the KCRA mirrors the
analysis of a claim under the ADA.  See Howard Baer, Inc. V. Schave, 127 S.W.3d 589, 592
(Ky. 2003).

12

doctor's statements that Beery could not twist from side to side, but that AHP actually perceived that Beery could not twist from side to side (i.e., that he was physically impaired) and that this perceived inability to twist prevented him from performing a broad category of jobs (i.e., substantially limited a major life activity).

Id. at 136–37.

The Court agrees with Judge Batchelder's concurrence, that a situation such as the one presented by Plaintiff is not direct evidence of discrimination, but requires at least one inferential step to reach the conclusion that the Defendant engaged in discrimination.  As Beery is a "not for publication" opinion, it is not binding precedent and is not the law of the circuit.  See Bell v. Johnson, 308 F.3d 594, 611 (6th Cir. 2002) ("It is well established in this circuit that unpublished cases are not binding precedent." ).  Thus, the Court is not required to follow the direct evidence approach adopted by the majority in Beery.  Instead, the Court will analyze the instant case under the prima facie framework first outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).

To succeed under the McDonnell Douglas approach, a plaintiff must establish a prima facie case of discrimination using circumstantial evidence.  Gecewicz v. Henry Ford Macomb Hosp. Corp., ---F. 3d---, 2012 WL 2362524, at *4 (6th Cir. June 22, 2012).  This requires a plaintiff to demonstrate five elements: "that she was disabled, she was otherwise qualified to perform the essential functions of her job; she suffered an adverse employment action; her employer knew or had reason to know of her disability; and either the position remained open or a non-disabled person replaced her."  Id.  Once a plaintiff makes such a showing, the burden shifts to the defendant to articulate a non-discriminatory explanation for the adverse employment action.  Whitfield v. Tenn., 639 F.3d 253, 259 (6th Cir. 2011).  "If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination."  Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008).        In the instant

13

case, Defendant has only challenged Plaintiff's ability to demonstrate the first and second prong of the prima facie case. As neither party has addressed the last three elements of the prima facie case, the Court assumes that they are not disputed and, therefore, will not address them.

**1. Was Plaintiff Disabled Under ADA**

Plaintiff contends that she has satisfied the first prong of the prima facie case by demonstrating that she was disabled under the ADA because the Defendant regarded her as disabled. The Americans with Disabilities Act prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, disability is defined as

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment[.]

42 U.S.C. § 12102(1). The Act goes on to state that

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).

> In an examination of the "regarded as" prong, the Supreme Court has held:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

14

Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999), *superseded by statute on other grounds*, Amendments Act of 2008, Pub. L. No. 110–325, § 3(4)(E)(I), 122 Stat. 3553 (2008).   "Thus, an individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties."  Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir. 2001).  Furthermore, when a plaintiff proceeds

> under a "regarded as" theory, we must look to the state of mind of the employer against whom he makes a claim. Under the "regarded as" prong of the ADA, membership in the protected class becomes a question of intent. And, as the district court correctly noted, 'that question— i.e., the employer's motive—is one rarely susceptible to resolution at the summary judgment stage."

Id.

To succeed on a "regarded as" disabled theory, Plaintiff must demonstrate that Defendant mistakenly perceived her as substantially limited in a major life activity.  Plaintiff contends that Defendant mistakenly perceived her as substantially limited in the major life activity of working.  "A claim that an employer perceived an employee as being unable to work requires 'proof that the employer regarded the employee as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.'"  Spees v. James Marine, Inc., 617 F.3d 380, 397 (6th Cir. 2010) (quoting Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 704 (6th Cir.2008)).  Defendant contends that Plaintiff's argument fails on two grounds: (1) Defendant was not mistaken in its perception that Plaintiff had heat and standing restrictions; and (2) these restrictions do not demonstrate that Plaintiff was disqualified from a class or broad range of jobs.

### a. Mistaken Perception

Defendant first argues that it did not misperceive Plaintiff's condition.  In support of this argument, Defendant cites Gruener v. Ohio Casualty Insurance Co., 510 F.3d 661, 665 (6th Cir.

15

2008).  In <u>Gruener</u>, the Sixth Circuit found that a "regarded as" disabled claim was defeated where

the plaintiff "admit[ed] that Ohio Casualty's understanding of her impairments and how they limited

her simply tracked the specific and valid restrictions prescribed by her own doctor."  <u>Id</u>.  Defendant

contends that just as in <u>Gruener</u>, it merely followed the Plaintiff's doctor's own valid restrictions and,

therefore, could not have misperceived her condition.  Defendant relies upon a single paragraph letter

written by Plaintiff's treating physician, Dr. Moses, to support its belief that Plaintiff suffered

standing and heat restrictions due to her MS condition.  The correspondence was submitted in support

of Plaintiff's second request for disability accommodation, and states in pertinent part:

> Because of [Plaintiff's] problems related to her MS, I have suggested she try
> to be on her feet for no more than one hour at a time.  She also needs to avoid
> environments where the temperature is more than 85-88 degrees.  Heat can make her
> MS symptoms worse.  Heat can cause her to have fatigue and can also weaken her.

(Def.'s Mot. for Summ. J., Ex. S, Dr. Moses' Letter dated Dec. 12, 2007.)  Based upon this letter,

Defendant determined that Plaintiff could not perform the essential functions of her position or of any

other open position at the Defendant's Horse Cave facility.

While Defendant contends that its reliance on Dr. Moses' letter absolves it of any liability

under <u>Gruener</u>, the Court disagrees.  In <u>Gruener</u>, the plaintiff admitted that she was actually under

valid restrictions, thus there was no issue as to whether the defendant misperceived her condition.

In the instant case, Plaintiff denies that she was under any restrictions.  Furthermore, Plaintiff has

presented evidence that Defendant misinterpreted the correspondence and imputed restrictions to

Plaintiff that were merely suggestions, demonstrating that the Defendant's belief was in fact a

misperception.

In situations similar to the instant case, the Sixth Circuit has found that such evidence creates

a genuine dispute of material fact that requires a determination by a jury.  In <u>Beery</u>, the plaintiff re-

16

injured a previous back injury after being transferred to a warehouse position that required him to twist 180 degrees from one side to the other.  243 F. App'x at 130.  When the plaintiff refused to work in that same position six-months later, he was sent home and told to secure "medical documentation to support his assertion that his back condition prevented him from safely working" the position.  Id.  The plaintiff provided a note from his treating physician that stated "[d]ue to mechanical problems, Patient cannot twist repeatedly from right to left" for the next month.  Id.

Thereafter, the plaintiff submitted a short-term disability application, with an Attending Physician's statement.  "Under 'Restrictions & Limitations' the physician stated, without qualification, 'No twisting from side to side[.]'" Id. at 131–32.  The plaintiff also submitted a Health Care Provider Certification under the FMLA, wherein his treating physician stated that "*Pt unable to do repeated work moving from side to side twisting*" and that the plaintiff's back condition was likely to cause one or two episodes of incapacitation per month.  Id. at 132.

The plaintiff's manager and HR director concluded that given the plaintiff's physician imposed restrictions, plaintiff was unable to perform not only his own job but any and all available positions at the plant.  The HR director then "called [the plaintiff] and told him that AHP had no work for him consistent with his treating physician's stated restrictions and, therefore was terminating his employment." Id. at 131.

The Sixth Circuit acknowledged that the defendant employer received three different physician statements that contradicted one another in describing the restrictions of the plaintiff's condition.  Notwithstanding the fact that one of the physician's notes "stated without qualification that Beery could not twist repetitively from side to side[,]" the court found that "[v]iewing the substance and context of [the] three documents, a jury could reasonably find that AHP was mistaken in its belief that Beery's back condition would indefinitely prevent him from doing any available jobs

17

at the warehouse." Id. at 134.  Accordingly, the court held that summary judgment on the plaintiff's "regarded as" disabled claim was inappropriate.  Id.

In Baker v. Windsor Republic Doors, 414 F. App'x 764 (6th Cir. 2011), the plaintiff, who was a forklift operator at a warehouse, suffered from an enlarged heart.  Id. at 766.  The plaintiff took a leave of absence to have a pacemaker installed. Id.  Prior to his return to work, the plaintiff submitted medical documentation that indicated that he had no restrictions and could return to work and resume activities as tolerated.  Id.  Along with this form, the plaintiff submitted a brochure on the pacemaker. Id.  The brochure indicated that certain levels of electromagnetic interference could present a potential risk to the pacemaker.  Id. at 767.

Before the employer would permit the plaintiff to return to work, it requested a letter from his cardiologist stating that plaintiff would not endanger himself by working around EMI fields present in the employer's warehouse.  Id.  The plaintiff's cardiologist "replied by recommending that [plaintiff] return to work with restrictions, which included avoiding 'contact with any electrical current or magnetic fields.'" Id.  After receipt of this letter, the employer refused to permit the plaintiff to return to work due to the dangerous levels of EMI at the facility, unless the plaintiff waived his right to statutory worker's compensation benefits in the event he suffered a heart-related injury.

At trial, a jury returned a verdict in favor of the plaintiff on his "regarded as" disabled claim. On appeal the defendant employer cited Gruener v. Ohio Casualty Insurance Co., 510 F.3d 661 (6th Cir. 2008), for the proposition that it could not have misperceived the plaintiff's condition because it simply followed the valid restrictions imposed by the plaintiff's cardiologist.  In upholding the jury's verdict, the Sixth Circuit rejected the defendant's argument based on Gruener because there was evidence that the defendant had mischaracterized the testimony of the plaintiff's cardiologist.

Id. at 772.  The court found that the employer defendant "was not simply relying on medical advice in prohibiting [plaintiff's] unfettered return to work but, rather, was giving effect to its own motivations.  In light of the definitions provided by relevant decisional precedent and by applicable regulations, therefore, the defendant did indeed regard [plaintiff] as disabled[.]" Id.

The instant case bears a striking resemblance to Beery and Baker.  Plaintiff was required to take various amounts of time off due to her MS condition but was always cleared to return to work with no restrictions.  After her last period of leave, Plaintiff submitted Dr. Moses' Return to Work form of November 26, 2007, which states that Plaintiff is cleared to return to work on December 2, 2007, *with no restrictions*.  (Pl.'s Resp., Ex. I, Dr. Moses' Aff., Ex. 2 (emphasis added).) Furthermore, the Certification of Health Care Provider form, completed by Dr. Moses on November 27, 2007 states that Plaintiff can return to a full time schedule and that the only time that Plaintiff would be unable to perform work of any kind would be during exacerbations of her condition, which could occur one-to-two times a year creating one-to-three weeks of incapacity. (Def.'s Mot. for Summ. J., Ex. Z, Certification of Health Care Provider dated Nov. 27, 2007.)  The November 27, 2007 form even indicates that the medication prescribed by Dr. Moses would decrease the progression and exacerbation of Plaintiff's condition.  (Id.)

However, after being presented with a single paragraph letter from Dr. Moses on December 12, 2007, Defendant determined that Plaintiff was restricted in her ability to stand and to work in temperatures above 85 degrees, precluding her from performing the essential functions of her job. Dr. Moses has since submitted an affidavit stating that the December 12, 2007 correspondence was not intended to be a restriction on the Plaintiff's ability to perform her job.  (Pl.'s Resp., Ex. I, Dr. Moses' Aff. ¶ 12.)  He further states that at no time did Defendant contact him regarding the content of that letter to determine if it was in fact a restriction.  (Id. at ¶ 13.)

19

The evidence of record contains several documents which unequivocally state that Plaintiff is able to return to work with no restrictions, as well as the testimony of the treating physician, albeit several years later, that Plaintiff had no restrictions due to her MS.  Bolstering this evidence is the fact that Plaintiff had been working at her position without incident for nearly one month prior to Defendant's decision to terminate her due to the perceived restrictions.  Against this backdrop of evidence is one document that Defendant has interpreted to mean that Plaintiff's condition now required standing and heat restrictions.  However, Defendant did not contact Plaintiff's treating physician to clarify whether Plaintiff was now under standing and heat restrictions, even though her official return to work form indicated that she had no restrictions.  Furthermore, a jury could find that the Defendant mischaracterized Dr. Moses' letter by imputing standing restrictions when the letter clearly states that Dr. Moses had only "suggested" that Plaintiff not be on her feet for more than one hour at a time.  (See infra Part II.B.3.)  Under these circumstances, a reasonable jury could conclude that Defendant mistakenly perceived that, due to her MS diagnosis, Plaintiff was unable to perform any job that required her to stand for longer than an hour or to be in an ambient temperature of 85 degrees or higher.

### b. class or broad range of jobs

Defendant next argues that even if it did misperceive Plaintiff's condition, that there is insufficient evidence that it believed her condition substantially limited her in the major life activity of working.  The Sixth Circuit has held that

> With respect to working, the term "substantially limits" means: "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

Doren v. Battle Creek Health Sys., 187 F.3d 595, 597 (6th Cir. 1999) (quoting 29 C.F.R. §

1630.2(j)(3)(I).  In making the determination regarding the life activity of working, the Sixth Circuit has held that a court *may* also consider:

> "(A) The geographical area to which the individual has reasonable access; (B) The job from which the individual has been disqualified . . . and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) The job from which the individual has been disqualified . . . and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)."

Id. 597–98 (quoting 29 C.F.R. § 1630.2(j)(3)(I)).

At oral argument, counsel for Defendant cited Doren and argued that to successfully demonstrate a substantial limitation on the activity of working, a plaintiff must produce expert testimony regarding the number and types of jobs in the geographic area from which the Plaintiff was perceived to be disqualified.  As Plaintiff has failed to designate an expert in this area, and the time to do so has passed, Defendant argues that it is entitled to summary judgment.  The Court disagrees with Defendant's interpretation of Doren.  Doren is clear that "a court *may* consider" evidence of the number and types of jobs within the geographical area from which a plaintiff's condition disqualifies her in determining whether the plaintiff is significantly restricted from a class or broad range of jobs. Id. 597–98.  This language hardly indicates a necessary requirement, much less a requirement that must be satisfied by expert testimony.  See Black v. Roadway Express, Inc., 297 F.3d 445, 455 n.13 (6th Cir. 2002) (noting "that '[t]he terms "number and types of jobs," . . ., are not intended to require an onerous evidentiary showing.'") (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)).  Under the prevailing precedent, the Court believes that Plaintiff may demonstrate that she is substantially restricted in the ability to perform either a class or broad range of jobs through evidence of the number and types of jobs utilizing similar skills available in the geographic area, but such evidence

21

need not be in the form of expert testimony.  Accordingly, the Court finds that Plaintiff's failure to designate expert testimony regarding the perceived substantial limitation is not fatal to her claim.

Plaintiff contends that she has presented sufficient evidence to create a genuine dispute of material fact regarding whether Defendant mistakenly perceived her as unable to perform a class of jobs or broad range of jobs due to her MS condition.  Taking the evidence in the light most favorable to the Plaintiff, the Court agrees.  The Sixth Circuit has found that "the inability to perform the manual tasks associated with assembly line work may qualify as a disability under the ADA." Henderson v. Ardco, Inc., 247 F.3d 645, 651 (6th Cir. 2001).  In Henderson, the plaintiff advanced a "regarded as" disabled claim contending that the defendant misperceived her back injury to have restricted her from the ability to work in a manufacturing operation.  Id. at 648.  The evidence that was presented at summary judgment was that the employer believed that the plaintiff had lifting restrictions and that the plant manager had remarked that "'there is not a job in the plant that her restrictions would not bump into.'" Id. at 651.

The Sixth Circuit found that a jury could interpret that statement as evidence that the employer considered "someone with physical restrictions unable to 'make it' doing factory work . . . which 'could constitute disability discrimination.'"  Id.  The court noted that "[a]lthough Henderson has presented little evidence to show that manufacturing represents a significant portion of the jobs locally available to her, this will ultimately be part of her burden in showing she was perceived as 'substantially impaired' in working in the Elkton area." Id. at 653 n.5.  Notwithstanding this lack of evidence regarding the number and types of jobs available in the geographic area, the Sixth Circuit held that summary judgment in favor of the defendant was inappropriate because the "Plaintiff has brought forward evidence that the defendant perceived there was no job for her at the Ardco plant, and this gives an indication of the employer's perception about her suitability for a class

22

of relevantly similar employment." Id. at 654.

In the instant case, the Court finds that Plaintiff has carried her burden and demonstrated a genuine dispute of material fact as to whether Defendant perceived Plaintiff as substantially restricted from a class of jobs, namely manufacturing. Defendant's perception of Plaintiff's condition was that it prevented her from working on her feet for more than one hour at a time or from working in an environment with an ambient temperature of 85-88 degrees or higher. Defendant believed that these restrictions eliminated Plaintiff's ability to perform the essential functions of her position as an inspector/packer. It can be inferred that Defendant not only believed that Plaintiff was unable to perform her specific job, but that she could not perform any job on the production floor because "altering the ambient temperature on the production floor to no more than 85-88 degrees" was not a viable or reasonable option. (Def.'s Answers to Pl.s First Set of Interrog. ¶ 4.) Plaintiff has further produced evidence that Defendant perceived Plaintiff as being unable to work at a position that required her to stand for more than one hour at a time, an essential requirement in her manufacturing position and many similar positions.

Plaintiff has also presented the affidavit of Beverly McManimie, wherein Ms. McManimie states that Defendant lied when it claimed that it had no other available jobs for which the plaintiff was qualified. (Pl.'s Resp. Ex. K, Beverly McManimie Aff. ¶¶ 17-18.) If a reasonable jury credited this testimony, the facts would indicate that the Defendant had open positions for which the Plaintiff was qualified, but for some reason chose not to offer them to the Plaintiff. A reasonable jury could infer that that reason was the Defendant's belief that Plaintiff was unable to perform any of those jobs due to her MS. This inference would indicate that Defendant believed Plaintiff was unable to perform any number of jobs in the manufacturing facility, not just her own inspector/packer job.

Much like Henderson, in the light most favorable to Plaintiff, this evidence demonstrates that

23

Defendant perceived Plaintiff as unable to work in a manufacturing operation.  In a "regarded as" disabled claim, such a showing has been sufficient to defeat summary judgment.  See e.g., Henderson, 247 F.3d at 654; Beery, 243 F. App'x at 134 (finding summary judgment inappropriate in "regarded as" claim where defendant believed that plaintiff's impairment prevented him from doing any available jobs at the warehouse); Coleman v. Keebler Co., 997 F. Supp. 1102, 1114 (N.D. Ind. 1998) ("[T]he fact that Gates regarded the Plaintiff as unable to perform any job within the Bluffton plant at the very least creates a genuine issue of material fact as to whether Gates perceived the Plaintiff as unable to perform a class or a broad range of jobs.").  Plaintiff has produced evidence that Defendant misperceived the limitations of her condition, imputing to her restrictions that were not necessary, and then determined that she was unable to perform not only her job, but any other open jobs for which she was qualified at the Horse Cave Facility, which happens to be the largest employer in the county.  Under these circumstances, the Court finds that Plaintiff has made a sufficient showing that the Defendant regarded her as disabled in the major life activity of working.

### 2. Was Plaintiff Otherwise Qualified to Perform the Essential Functions of her Job

Defendant next contends that Plaintiff has failed to produce evidence that she was otherwise qualified to perform the essential functions of her job.  Plaintiff has produced evidence that she had worked at her Poly-line I/P position without incident for nearly a month after returning from her last leave of absence, yet she was terminated due to her perceived inability to stand for longer than an hour or work in temperatures above 85 degrees.  Furthermore, Dr. Moses has testified that contrary to the Defendant's interpretation of the December 12, 2007 correspondence, Plaintiff was under no restrictions and was fully capable of performing the essential functions of her job.  (Pl.s' Resp., Ex. I, Moses' Aff. ¶¶ 12, 14.)  Accordingly, the Court finds that Plaintiff has made a sufficient showing that she was otherwise qualified to perform the essential functions of her job.

24

### 3. Defendant's Proffered Legitimate Non-Discriminatory Reason for Plaintiff's Termination

Under the McDonnell Douglas framework, the burden now shifts to Defendant to offer a "legitimate, non-discriminatory" reason for its action. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1179 (6th Cir. 1996) *abrogated on other grounds by* Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312 (6th Cir. 2012). Once the Defendant proffers such a reason, the burden shifts back to the Plaintiff to demonstrate that the reason was in fact a mere pretext for unlawful discrimination. Id. In the ADA context, a Plaintiff may demonstrate that a proffered explanation was pretextual by producing evidence that the proffered explanation: (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action. Layman v. Alloway Stamping & Mach. Co., Inc., 98 F. App'x 369, 376–77 (6th Cir. 2004). However, the Sixth Circuit Court of Appeals has adopted an "honest belief" rule whereby a "defendant may rebut the plaintiff's evidence of pretext, by demonstrating that the defendant's actions, while perhaps 'mistaken, foolish, trivial, or baseless,' were not taken with discriminatory intent." Clay v. United Parcel Serv., Inc., 501 F.3d 695, 714–15 (6th Cir. 2007)

> Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. [Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998).] An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." Id. at 807.

Majewski v. Automatic Data Proc., Inc., 274 F.3d 1106, 1117 (6th Cir. 2001).

> In determining whether an employer "reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." [ Smith, 155 F.3d at 807 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981))]. Although we will not "micro-manage

25

the process used by employers in making their employment decisions," we also will not "blindly assume that an employer's description of its reasons is honest." Id. Therefore, "[w]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." Id. at 807–08.

Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir 2006).  Importantly, "Wright makes clear, the burden is on the employer 'to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" Clay, 501 F.3d at 714 (quoting Wright, 455 F.3d at 708).

Defendant contends that it is entitled to summary judgment because it had an honest belief that Plaintiff had to work in sub-85 degree temperatures based upon its interpretation of Dr. Moses' December 12, 2007 correspondence.  As an initial matter, the Court notes that Defendant has conflated its production of a legitimate non-discriminatory reason and its good faith belief in that reason.[4]  Broken down into its predicate parts, Defendant's argument is as follows: the proffered legitimate non-discriminatory reason for terminating Plaintiff is that Dr. Moses' December 12, 2007 correspondence imposed a heat restriction on Plaintiff, and in the event that Plaintiff demonstrates that this belief had no basis in fact, Defendant is still protected because it honestly held this mistaken belief.

Defendant having proffered a non-discriminatory reason for Plaintiff's termination, that Dr. Moses restricted Plaintiff from performing essential functions of her job, the burden now shifts to

---

[4] Given the circumstances of this "regarded as" disabled case, perhaps the Defendant simply intended to skip the analysis of the proffered non-discriminatory reason and the Plaintiff's demonstration of pretext because the parties' contentions on this issue have already been conducted above regarding whether Defendant was in fact mistaken that Plaintiff was restricted. See supra Part II.B.1.a.

26

Plaintiff to demonstrate that this reason was in fact pretextual.  Plaintiff contends that she has met this burden by demonstrating that the proffered reason had no basis in fact.  The evidence in the light most favorable to Plaintiff is that she was returned to work with no restrictions; that she was and had been performing her job without incident at the time of her termination; and that her physician has since testified that at not time did he place her under any restrictions.  The Court agrees that this is sufficient evidence to create a genuine dispute of material fact as to whether the Defendant's proffered reason was in fact a pretext for discrimination.

This in turn shifts the burden back to Defendant, giving it "one last opportunity . . . to prevail on summary judgment" by demonstrating that although it was mistaken about its proffered reason, that it had an honest belief in that reason and was thus devoid of discriminatory intent.  Clay, 501 F.3d at 714–15.  The holding in Clay is clear that the burden rests on Defendant to demonstrate not only that it held an honest belief in its non-discriminatory reason, *but also* that the honest belief was based upon a reasonably informed decision made using the particularized facts before Defendant at the time.  Id.  In the instant case, Defendant has not carried this burden.  The single paragraph letter upon which the Defendant relies is contradicted by all of Plaintiff's return to work forms which indicate she had no restrictions, as well as the fact that Plaintiff was successfully working her position without incident at the time of her termination.  Yet, in the face of this incongruous information, the Defendant made no attempt to rectify the inconsistencies by contacting either Dr. Moses or Plaintiff.  See Holiday v. City of Chattanooga, 206 F.3d 637, 646 (6th Cir. 2000) (holding that defendant was not entitled to simply rely upon a physician's recommendation, where the recommendation, which "consist[ed] of two scribbled lines at the bottom of a boilerplate evaluation form," was flatly contradicted by the factual evidence available to the defendant at the time of its decision, including that the plaintiff was successfully performing a similar job).

27

Furthermore, Defendant's basis for its good faith belief, that it correctly interpreted the word "need" as implying a restriction, is contradicted by the record in that it also interpreted the word "suggested" as implying a restriction.  Defendant contends that it held an honest belief that Plaintiff had a heat restriction because it reasonably interpreted the phrase "needs to avoid environments where the temperature is more than 85-88 degrees."  However, the record indicates that at the time Plaintiff was terminated that Defendant had interpreted Dr. Moses' correspondence as imposing heat and standing restrictions, although the latter was only discussed as a "suggestion."  Dr. Moses' correspondence states that "[b]ecause of her problems related to her MS, I have *suggested* she try to be on her feet for no more than one hour at a time.  She also *needs* to avoid environments where the temperature is more than 85-88 degrees."  (Def's Mot. for Summ. J., Ex. S., Dr. Moses' Letter dated Dec. 12, 2007.)  In its letter to Plaintiff denying her disability accommodation request, Defendant states that "you have submitted medical documentation indicating that you should not be on your feet for more than 1 hour and you should avoid temperatures of more than 85 – 88 degrees."  (See Def.'s Mot. for Summ. J., Ex. T, Dart Letter dated Dec. 31, 2007).  The letter continues and states that Defendant has no current open positions that meet these "restrictions."  (Id.)

While Defendant would like the Court to believe that it carefully parsed the language of Dr. Moses' note to reach an honest belief that Plaintiff was restricted, there is evidence to demonstrate otherwise.  This evidence demonstrates that Defendant did not engage in a reasonably informed decision based upon the particularized facts before it.  See Jones v. Nissan North America, Inc., 438 F. App'x 388, 403–04 (6th Cir. 2011) (finding that the honest belief rule did not apply because defendant did not engage in a reasonably informed decision when it imputed three restrictions to the plaintiff, while only two of the restrictions could reasonably have been implied by the oral and written ruling at issue).  Therefore, the Court finds that Defendant has failed to demonstrate that it

28

is entitled to the honest belief rule.[5]

Accordingly, the Court finds that Plaintiff has demonstrated a prima facie case of "regarded as" disabled discrimination, that she has successfully rebutted the Defendant's proffered legitimate non-discriminatory reason for her termination, and that Defendant is not entitled to the honest belief rule.  Therefore, summary judgment is not appropriate on Plaintiff's "regarded as" disabled claim, and the Defendant's motion as to this claim is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Dart Container Corporation of Kentucky's Motion to Strike Plaintiff's First Supplemental Response to Defendant's First Set of Interrogatories and Requests for Production of Documents and Motion to Strike Affidavit of Dr. Harold Moses and/or Motion in Limine [DN 49] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Dart's Motion for Summary Judgment [DN 51] is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** as to Plaintiff's actually disabled claim, failure to accommodate claim, and retaliation claim, and is **DENIED** as to Plaintiff's "regarded as" disabled claim.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 6, 2012

cc: counsel of record

---

[5]  The Court notes that the Sixth Circuit has called into question whether the honest belief rule is applicable past the summary judgment stage.  See Jones, 438 F. App'x at 402 n.14.

29